IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON SATTERFIELD, R69386, )
)
        **Plaintiff,** )
)
vs. ) CIVIL NO. 11-65-GPM
)
ALFONSO DAVID, WEXFORD HEALTH )
SOURCES, INC., SHAWNEE )
CORRECTIONAL CENTER, and )
ILLINOIS DEPARTMENT OF )
CORRECTIONS, )
)
        **Defendants.** )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

    Plaintiff Jason Satterfield, an inmate in Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving an 18 year sentence for armed robbery. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such
>     relief.

28 U.S.C. § 1915A.

    An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**Summary of Facts**

The following factual summary is taken from the complaint (Doc. 1) and from Plaintiff's detailed chronology of events in Exhibit 1 (Doc. 1-2). On January 4, 2009, Plaintiff sprained his right ankle during a handball game. He was seen the next day by a nurse in the Health Care Unit ("HCU"), where he was given crutches and Ibuprofen, and told to stay off his feet (Doc. 1, p. 4; Doc. 1-2, p. 2). Plaintiff's ankle was x-rayed on January 8. By that time, the foot was very swollen and painful, black in color, and cold to the touch (Doc. 1-2, p. 2).

Plaintiff first saw Defendant David, a medical doctor, on January 12 (Doc. 1-2, p. 3).

Defendant David refused to examine Plaintiff's foot or ankle despite Plaintiff's request, and refused to give Plaintiff any medication for the severe pain. *Id.* Finally, on January 20, after the x-rays came back, Defendant David examined Plaintiff's foot and gave him Ibuprofen.

The condition of Plaintiff's foot and leg continued to grow worse. His entire foot was black, cold to the touch, very painful, and the swelling increased. On February 5, Plaintiff put in a sick call request. He saw Defendant David on February 11, and asked for stronger pain medication because the Ibuprofen was not helping. Defendant David said he could not give Plaintiff anything stronger, and said he would schedule Plaintiff for an MRI. On February 16, Plaintiff again submitted a sick call request. By the time he was taken to the HCU on February 20, his foot was twice its normal size, very cold to the touch, and Plaintiff was unable to move his toes (Doc. 1-2, p. 4). He was told the MRI test was scheduled for February 26. On February 21, the swelling was moving up Plaintiff's leg to his knee. Several correctional officers to whom Plaintiff conveyed his request to see a nurse looked at the condition of Plaintiff's foot and offered their opinions that Plaintiff should be in the hospital.

On February 22, Plaintiff was in pain so severe that his entire body was shaking (Doc. 1-2, p. 5). He had been unable to walk since the injury, and the constant pain interfered with his sleep. He filed a grievance requesting the MRI immediately. He was taken to the HCU, where a nurse called Defendant David at home. Plaintiff overheard the nurse say that Plaintiff should be in the hospital, but she returned to tell Plaintiff that Defendant David said he could wait until the MRI on February 26. The nurse gave Plaintiff more Ibuprofen. *Id.*

Plaintiff continued to request immediate treatment, asking to talk to a major who refused to speak to him, writing a letter to the warden, and having his mother call the prison. The MRI was

performed on February 26. On February 27, the HCU nurses examined Plaintiff, and he was sent to Heartland Hospital in Marion because of the serious condition of his foot. The Heartland emergency physician initially recommended Plaintiff be sent to a St. Louis hospital for the foot to be amputated (Doc. 1-2, p. 7). However, due to transportation problems, this trip was delayed and further tests were done indicating the foot could be saved. Plaintiff was diagnosed with severe nerve damage (Reflex Sympathetic Dystrophy or "RSD"). Plaintiff alleges the RSD was caused by Defendant David's delay in treating the serious and prolonged swelling in Plaintiff's foot, which crushed the nerves. Plaintiff was given Vicodin and Morphine at the hospital, and was returned to the HCU at Shawnee Correctional Center. Plaintiff was not returned to his cell, but remained in the HCU for some weeks.

On March 13, Defendant David informed Plaintiff that approval had been given for him to be sent outside the prison for treatment (Doc. 1-2, p. 9). However, three days later, Defendant David told Plaintiff that he would not get any outside treatment yet because Defendant David wanted to wait to see if Plaintiff's condition would improve on its own. Plaintiff protested that it had only gotten worse for the past two and a half months. The foot was still black and swollen to twice its size.

Plaintiff was taken to Union County Hospital in Anna on March 23, 2009 for a physical therapy evaluation, and approval was later given for a two-week therapy course (Doc. 1-2, p. 12). Plaintiff's first physical therapy session was on April 6. He continued to have physical therapy intermittently through August 2009, with some interruptions while authorization was sought for the therapy to continue (Doc. 1-2, p. 51-52). Plaintiff was temporarily transferred to Danville Correctional Center on September 2, 2009, which put an end to that treatment. *Id.*

On April 17, 2009, the physical therapist recommended that Plaintiff be treated with a "nerve block" to help relieve his pain (Doc. 1-2, p. 15). Plaintiff was told on May 18 that Defendant Wexford Health Sources, Inc. ("Wexford"), had approved this treatment (Doc. 1-2, p. 20). However, the nerve block procedure was not scheduled until June 1, which Plaintiff attributes to Defendant David's delay in contacting the outside doctor (Dr. Walker) who would perform the procedure. It was further delayed until June 10, because Defendant David failed to stop Plaintiff's Ibuprofen two days before the original date. Similarly, another nerve block was recommended by the physical therapist on July 8, but due to Defendants David's delay, was not performed until August 12, 2009 (Doc. 1-2, p. 33, 45).

Plaintiff has additional complaints relating to Defendant David's failure to provide effective medication for his pain and swelling during his course of treatment. Defendant David prescribed Tylenol 3, which Plaintiff took for some time, but had to discontinue when he developed stomach problems (Doc. 1-2, p. 10-12). Defendant David did not provide any substitute pain medication (Doc. 1-2, p. 19, 26, 39). Some time after Plaintiff began physical therapy, he was put on a Clonidine patch to relieve the swelling. Defendant David later discontinued the patch, and Plaintiff's swelling worsened (Doc. 1-2, p. 28-29, 46).

Plaintiff seeks damages against Defendants David, Wexford, Shawnee Correctional Center, and the Illinois Department of Corrections, for his physical pain and suffering and emotional distress.

**Discussion**

**Introduction - Deliberate Indifference**

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not

state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need. *Id.*

Plaintiff has described a condition that meets several of the criteria described in *Gutierrez*. The seriousness of his initial injury was obvious to a lay person, and, as the swelling and discoloration grew worse, the need for medical intervention became even more apparent. Since January 4, 2009, he has been in chronic and substantial pain from the ankle injury and swelling; the condition significantly affects his daily activities of walking and sleeping; and the delay in treating the condition has caused continued pain, as well as further significant injury in the form of nerve damage that may be permanent. These allegations suffice to meet the objective showing that Plaintiff had a serious medical condition. The remaining question is whether he has sufficiently alleged deliberate indifference on the part of the various Defendants.

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837. The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a

plaintiff need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

A delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate a medical condition"). The Seventh Circuit has also found that an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer); *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990)*, citing Estelle*, 429 U.S. at 104 n.10 (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of treatment knowing that it was ineffective.").

**Defendant David**

Plaintiff has alleged that Defendant David delayed treating his injured ankle, allowing the severe swelling and pain to continue to the point that Plaintiff developed serious nerve damage. Nearly two months elapsed from Plaintiff's injury on January 4, 2009, until he was sent to the hospital for testing and evaluation on February 26 and 27. After the nerve damage was diagnosed,

Defendant David did not send Plaintiff for a physical therapy evaluation for another month, delaying further even after the evaluation was approved. Again, Plaintiff's suffering was prolonged when Defendant David delayed his first nerve block treatment for a month and a half after the procedure was recommended. The second nerve block treatment was delayed for a month. In addition, Plaintiff alleges that Defendant David failed to provide him with pain medication on several occasions.

Whether Defendant David's actions constituted deliberate indifference, or were mere negligence or malpractice, cannot be determined at this stage of the litigation. Therefore, Plaintiff's claims against Defendant David should receive further review and are not subject to dismissal at this time.

**Defendant Wexford Health Sources, Inc.**

Defendant Wexford is a corporation that employs Defendant David and provides medical care at the prison. Plaintiff does not make specific allegations against Defendant Wexford, but appears to claim that it should be liable on the basis that it was the employer of Defendant David. However, this is not the law. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Plaintiff makes no allegation that Defendant David acted or failed to act as a result of an official policy espoused by Defendant Wexford. Further, there is no general theory of respondeat superior available in § 1983 cases—Plaintiff's claim against Wexford could not arise merely from

the fact it employed Defendant David. *See Vinning-El v. Evans,* No. 10-1681, 2011 WL 4336661 at *1 (7th Cir., Sept. 16, 2011). Plaintiff has therefore failed to state a claim upon which relief may be granted against Defendant Wexford, and this portion of Plaintiff's claim shall be dismissed without prejudice.

**Defendants Shawnee Correctional Center and Illinois Department of Corrections**

Plaintiff cannot maintain his suit against the Defendant Illinois Department of Corrections, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Center*, 931 F.2d 425, 427 (7th Cir. 1991); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990). Likewise, the Shawnee Correctional Center, which is a division of the Illinois Department of Corrections, is not a "person" within the meaning of the Civil Rights Act and is not subject to a § 1983 suit. *See Will,* 491 U.S. at 71.

Even if Plaintiff had named a person such as the prison warden as a defendant, he would have fared no better. There is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). For these reasons, Defendants Shawnee Correctional Center and Illinois Department of Corrections shall be dismissed from this action with prejudice.

**Disposition**

IT IS HEREBY ORDERED that Plaintiff fails to state a claim upon which relief may be granted against Defendant **WEXFORD HEALTH SOURCES, INC.,** and this Defendant is hereby **DISMISSED** from this action without prejudice. Likewise, Plaintiff cannot maintain a claim against Defendants **SHAWNEE CORRECTIONAL CENTER** and **ILLINOIS DEPARTMENT of CORRECTIONS**, therefore these Defendants are **DISMISSED** from this action with prejudice.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendant **DAVID**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that, if the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

IT IS FURTHER ORDERED that Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document

submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: 10/6/2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge